<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____

|  |  |  |
|---|---|---|
| **HATEM F. KHATER,** | : | |
| | : | |
| **Plaintiff, Pro Se,** | : | **Civil Action No. 14-4618 (MCA)** |
| | : | |
| **v.** | : | |
| | : | |
| **PUZINO DAIRY INC. and** | : | |
| **CRAIG PUZINO,** | : | **REPORT AND RECOMMENDATION** |
| | : | |
| **Defendants.** | : | |

_____:

I.     <span style="font-variant:small-caps">INTRODUCTION</span>

       This matter is before the Court by way of a motion for default judgment filed by Plaintiff pro se Hatem Khater.  <u>See</u> Pl.'s Mot. for Default Judgment, Apr. 15, 2015, D.E. 27.  Plaintiff's motion is unopposed.[1]  The Honorable Madeline C. Arleo, United States District Judge, referred this motion to the Undersigned for a Report and Recommendation.

       Pursuant to Federal Rule of Civil Procedure 78, and Local Civil Rule 78.1, the Court decided this motion without oral argument.  For the reasons set forth below, the Undersigned respectfully recommends that the District Court: (i) deny Plaintiff's motion for default judgment, and (ii) grant Plaintiff an extension of time to serve Defendant Craig Puzino, and Defendant Puzino Dairy Inc. ("Puzino Dairy") (collectively "Defendants") with the Summons and the Complaint.

---

[1] Defendants' opposition was due by May 4, 2015.  The lack of a response, however, might be explained by the service deficiencies discussed below.

II.   <u>BACKGROUND</u>

On June 6, 2014, Plaintiff filed an employment discrimination complaint with the U.S.

Equal Employment Opportunity Commission ("EEOC"), and the New Jersey Division on Civil

Rights ("NJDCR").  <u>See</u> EEOC Compl., June 6, 2014, D.E. 1; <u>see also</u> NJDCR Compl., at 2,

D.E. 1-1.  Plaintiff claims that Defendants hired him on September 24, 2013 as a dockworker.

<u>See</u> NJDCR Compl., at 2.  He alleges that on approximately October 1, 2013, his former

supervisor and co-workers "called [him] a terrorist," ridiculed his accent, and asserted that he

will "blow them up."  <u>See id.</u>  After complaining to Defendant Craig Puzino, his former boss,

about that incident, Plaintiff alleges that Defendants reduced his pay.  <u>See id.</u>  Defendants later

terminated Plaintiff on October 29, 2013.  Plaintiff alleges that he was terminated "in retaliation

[for his complaints]" to Defendants.  <u>See id.</u>  More specifically, Plaintiff asserts that he was

"subjected to harassment . . . because of [his] race (Arab), national origin (Palestinian), and

religion (Muslim)[.]"  <u>Id.</u>  He, for example, asserts that his pay was reduced when Defendants

learned about his "race, national origin, [and religion]."  <u>Id.</u>

After investigating Plaintiff's Complaint, the EEOC issued a Notice of Right to Sue

Letter stating that it did not find "that the information obtained establishe[d] violations of the

statutes."  <u>See</u> Dismissal and Notice of Rights, at 1, June 30, 2014, D.E. 1-1.  Accordingly, on

July 23, 2014, Plaintiff filed the previously denied EEOC Complaint with this Court.  <u>See</u> EEOC

Compl., July 23, 2014, D.E. 1.  On August 5, 2014, the District Court granted Plaintiff's

application to proceed in forma pauperis ("IFP").  <u>See</u> Order, Aug. 5, 2014. D.E. 4.  The Court

later denied Plaintiff's application for pro bono counsel.  <u>See</u> Opinion & Order, Feb. 10, 2015,

D.E. 25.

## A. SERVICE OF PROCESS

The record indicates that Plaintiff attempted to serve Defendants on three different occasions by three different methods.  First, Plaintiff mailed "2 copies of the Summons to the Defendant on 08/15/2014 [because] there was no other alternative [to personal service].  [He] fear[ed] to have someone go [to Defendant's address . . . because] [he did not] have an attorney or it might [have] cause[ed] [too] much drama."  Cert. of Service, Aug. 18, 2014, D.E. 7.

Second, Plaintiff's friend, Mr. Mohammed Jaffal, attempted service on August 20, 2014.  See Cert. of Service, Aug. 21, 2014, D.E. 10.  On that date, Mr. Jaffal affirmed that he left copies of the Summons at "111 Maltese Drive, Totowa, NJ 07512," which, as the Complaint indicates, is Defendant Puzino Dairy's business address.  Id. at 2-3; see also EEOC Compl., at 2, June 6, 2014, D.E. 1.

Finally, on September 16, 2014, the U.S. Marshal Service personally served Defendant Craig Puzino with the Summons and the Complaint at Mr. Puzino's Totowa, New Jersey place of business.  See Executed Summons, Sept. 25, 2014, D.E. 15.  The Summons indicates that the Marshal left copies of the Summons and the Complaint with Defendants' receptionist.  Id.  Regarding this final attempt, it appears that Plaintiff requested the Marshals serve Defendant Craig Puzino and non-party Dave Hascup.  See id. at 1-2.

To date, no defendants has answered the Complaint.  Plaintiff requested the entry of default on October 16, 2014, which the Clerk of Court entered on October 19, 2014.  See Pl.'s Request for Entry of Default, Oct. 16, 2014, D.E. 19; Clerk's Entry of Default, Oct. 19, 2014.  Plaintiff moved for default judgment on April 15, 2015.  See Pl.'s Mot. for Default Judgment, Apr. 15, 2015, D.E. 27.

In support of his application for default judgment, Plaintiff submitted, among other documents: (i) handwritten notes from October of 2013, and January of 2014, which generally discuss the discriminatory treatment at issue, see Pl.'s Notes, at 4-8, D.E. 27; (ii) Plaintiff's Puzino Dairy Inc. pay stubs from September 29, 2013 to November 3, 2013 (collectively the "Pay Stubs"), see Pl.'s Pay Stubs, at 9-10, D.E. 27; and (iii) a letter from Martin M. Ayrovainen, the Chief Financial Officer of Plaintiff's current employer, Aluf Plastics Inc., which indicates Plaintiff's current hourly pay rate ($10.25) and his start date (June 15, 2014), see Ayrovainen Ltr., Aug. 29, 2014, D.E. 27.

The notes contain information relevant to Plaintiff's discrimination claim.  See id., at 4-8, D.E. 27.  In one of the notes, for instance, Plaintiff wrote that "Dave Hascup [his] supervisor at . . . Puzino Dairy Inc. called [him] a terrorist [and said] where is your camel which . . . all of [his] fellow co-workers [then repeated]."  Id. at 4.  The next day, Plaintiff wrote that he spoke with Defendant Craig Puzino about the incident and that Mr. Puzino threatened to lower his pay and terminate him if he [complained again] about Dave Hascup . . . and [his] fellow [co-workers]."  Id. at 5.  In an entry dated October 29, 2013, Plaintiff alleged that his supervisor Dave Hascup "harassed [him again] so [he complained to Defendant Craig Puzino]" who then terminated Plaintiff because he did not want to hear Plaintiff "complaining about being harassed."  Id. at 6.

On May 15, 2015, the Court issued an Order requiring Plaintiff to supplement his motion for default judgment with a sworn statement stating his current pay rate, the date he began working for his new employer, and any information concerning unpaid overtime.  See Order, May 15, 2015, D.E. 29.  In response, Plaintiff submitted a notarized affidavit stating that he began working for Aluf Plastics on June 15, 2014 at an hourly rate of $10.00, and that his pay is currently $10.50 per hour.  See Pl.'s Aff., May 20, 2015, D.E. 30.  The Affidavit does not specify

4

when Plaintiff's pay increased from $10.00 per hour to $10.50 per hour.  See id.  However,

Plaintiff submitted a pay stub for the period beginning May 2015, which contained the increased

rate.  See id. at 4. In his Affidavit, Plaintiff also explains that he lost any evidence relating to the

thirty-four hours of overtime that Defendants allegedly did not pay him.  Id. at 1.

III.    DISCUSSION

A.    SERVICE OF PROCESS

The entry of default judgment is a "sanction of last resort."  Doug Brady, Inc. v. N.J.

Bldg. Laborers Statewide Funds, 250 F.R.D. 171, 177 (D.N.J. 2008).  The Third Circuit

disfavors default judgment and prefers that cases be decided on their merits.  See U.S. v.

$55,518.05 in U.S. Currency, 728 F.2d 192, 194-95 (3d Cir. 1984); see also Zawadski de Bueno

v. Bueno Castro, 822 F.2d 416, 420 (3d Cir. 1987) (explaining that courts must resolve all doubt

in favor of allowing cases to proceed on the merits).

Because courts lack personal jurisdiction where service of process is improper,

determining proper service is a threshold issue.  Lampe v. Xouth, Inc., 952 F.2d 697, 700-01 (3d

Cir. 1991) ("A court obtains personal jurisdiction over the parties when the complaint and

summons are properly served upon the defendant.  Effective service of process is therefore a

prerequisite to proceeding further in a case."); see also U.S. v. One Toshiba Color Television,

213 F.3d 147, 156 (3d Cir. 2000) ("[T]he entry of a default judgment without proper service of a

complaint renders that judgment void."); Gold Kist, Inc. v. Laurinburg Oil Co., Inc., 756 F.2d

14, 19 (3d Cir. 1985) ("A default judgment entered when there has been no proper service of the

complaint is, a fortiori, void, and should be set aside.").  Plaintiff pro se bears the burden of

proving sufficient service of process.  See Grand Entm't Grp., Ltd. v. Star Media Sales, 988 F.2d

476, 488 (3d Cir. 1993).  Although courts liberally construe "the pleadings and the complaints of

5

pro se plaintiffs . . . [they] must follow the rules of procedure and the substantive law."
Thompson v. Target Stores, 501 F. Supp. 2d 601, 603 (D. Del. 2007); see also McNeil v. U.S.,
508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil
litigation should be interpreted so as to excuse mistakes by those who proceed without
counsel.").

Under Federal Rule of Civil Procedure 4(m), plaintiffs must serve process "within 120
days after the complaint is filed."  Rule 4(e), which governs service of process over individuals,
states:

> Unless federal law provides otherwise, an individual—other than a minor,
> an incompetent person, or a person whose waiver has been filed—may be
> served in a judicial district of the United States by:
> (1) following state law for serving a summons in an action brought in courts
> of general jurisdiction in the state where the district court is located or where
> service is made; or
> (2) doing any of the following:
>> (A) delivering a copy of the summons and of the complaint to the
>> individual personally;
>> (B) leaving a copy of each at the individual's dwelling or usual place
>> of abode with someone of suitable age and discretion who resides
>> there; or
>> (C) delivering a copy of each to an agent authorized by appointment
>> or by law to receive service of process.

Fed. R. Civ. P. 4(e).  Under New Jersey law, personal service is the primary method of obtaining
personal jurisdiction.  See N.J. Ct. R. 4:4-4(a), 4:4-5(a).  A party accomplishes personal service
by delivering:

> a copy of the summons and complaint to the individual personally, or by
> leaving a copy thereof at the individual's dwelling place or usual place of
> abode with a competent member of the household of the age of 14 or over
> then residing therein, or by delivering a copy thereof to a person
> authorized by appointment or by law to receive service of process on the
> individual's behalf. . ."

N.J. Ct. R. 4:4-4(a)(1).

An individual's place of employment "does not qualify [as the] "usual place of abode" or dwelling required under the Rules.  Reddy v. MedQuist, Inc., No. 06-4410, 2009 WL 2413673, at *4 (D.N.J. Aug. 4, 2009) ("The weight of persuasive authority, including authority from this jurisdiction, concludes that delivering service to an employer's office is not delivery to an individual's dwelling place.").  Courts, furthermore, have decided that service by mail does not satisfy "Rule 4 unless the defendant returns a waiver of service as provided in Rule 4(d)[.]" Wiggins v. United Food & Commercial Workers Union, No. 04-6048, 2006 WL 3110687, at *7 (D.N.J. Oct. 30, 2006); see also Bey v. Daimler Chrysler Servs. of N. Am., LLC, No. 04-6186, 2006 WL 1344080, at *9 (D.N.J. May 15, 2006) ("Mailing the summons and Complaint to the office of another defendant is insufficient, particularly where, as here, no evidence indicates that the defendant received the mail.").

New Jersey Court Rule 4:4-4(b) provides the methods for substitute or constructive service, such as personal service outside the state, simultaneous mailings by ordinary and certified (or registered) mail, and "as provided by court order, consistent with due process of law." N.J. Ct. R. 4:4-4(b)(1), (b)(3).  To serve by substituted means, however, a party must demonstrate due diligence that satisfies the requirements specified in New Jersey Court Rule 4:4-5(b).  See N.J. Ct. R. 4:4-5(a); 4:4-4 (b)(1) (cross-referencing Rule 4:4-5(b)); N.J. Ct. R. 4-4:4(b)(3) (noting that service by a court order consistent with due process is precluded  "[i]f service can be made by any of the modes provided by this rule"); see also Garrett v. Matisa, 394 N.J. Super. 468, 475-76 (N.J. Ch. 2007) (using affidavit requirement in Rule 4:4-5 as model for unique notice issue).  While due diligence lacks a fixed standard, courts have clarified that a plaintiff must establish "efforts . . . to locate and serve a specific defendant."  Modan v. Modan,

7

327 N.J. Super. 44, 48 (App. Div. 2000) (internal citation and quotation marks omitted).  In other words, due diligence requires that plaintiffs pursue information that they possess or can otherwise reasonably obtain.  See id. at 48-49; see also N.J. Ct. R. 4:4-5(b) (requiring that plaintiff seeking to serve by alternative means file an affidavit explaining "diligent inquiry").

### i. DEFENDANT CRAIG PUZINO

Here, a review of the record indicates that Plaintiff did not properly serve Defendant Craig Puzino, and that the Court therefore cannot enter default judgment against him.  See, e.g., One Toshiba, 213 F.3d at 156.  First, in violation of New Jersey Court Rule 4:4-5, Plaintiff initially attempted to serve Defendants by mail without explaining in detail, by affidavit or otherwise, why he could not personally serve them.  See Cert. of Service, Aug. 18, 2014, D.E. 7. Indeed, one interpretation of the Certificate of Service is that Plaintiff never attempted personal service.  Plaintiff's Certificate of Service states that he mailed the Summons to Defendants because there was "no other alternative [to personal service]."  But before the Court can accept that explanation, Plaintiff must offer evidence justifying substituted service.  See Schneider Nat., Inc. v. Schneider Movers, Inc., No. 10-140, 2010 WL 1490593, at *3 (D.N.J. Apr. 12, 2010) (explaining that substituted service is proper where the party conducts "broader investigative efforts to locate parties, such as conducting Internet 'people finder' searches; utilizing an investigator; or searching voter registration records.").  Specifically, Plaintiff must explain in considerably greater detail his efforts to effect personal service, when he attempted that service, where he did so, and why it was unsuccessful.

Plaintiff's two other attempts to serve Defendant Puzino were also improper because they occurred at Defendant Puzino's place of business rather than at his "dwelling place or usual place of abode[.]"  N.J. Ct. R. 4:4-4(a)(1); see also Reddy, 2009 WL 2413673, at *4.

8

Specifically, on August 20, 2014, it appears that Plaintiff's friend, Mr. Mohammed Jaffal, left a copy of the Summons at Mr. Puzino's Totowa, New Jersey business address.  <u>See</u> Cert. of Service, Aug. 21, 2014, D.E. 10.  Similarly, the service attempt approximately three weeks later at the same address cannot qualify under Rule 4:4-1(a)(1) because that address was not Puzino's dwelling or abode.  <u>See</u> Cert. of Service, Sept. 25, 2014, D.E. 15.  The Court thus concludes that Defendant Puzino was improperly served, and that default judgment is improper.  <u>See, e.g.</u>, <u>One Toshiba Color Television,</u> 213 F.3d at 156.[2]

### ii. DEFENDANT PUZINO DAIRY

Evidence in the record further indicates that Plaintiff did not properly serve Defendant Puzino Dairy.  Under Federal Rule of Civil Procedure 4(h)(1), plaintiffs may serve corporations "in the manner prescribed by Rule 4(e)(1) for serving an individual" or by "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant."   In general, "delivery" of the summons and the complaint upon a corporation also "does not include service by mail." <u>Signs by Tomorrow-USA, Inc. v. G.W. Engel Co.</u>, No. 05-4353, 2006 WL 2224416, at *3 (D.N.J. Aug. 1, 2006); <u>see also</u> <u>Mettle v. First Union Nat'l Bank</u>, 279 F. Supp. 2d 598, 602 (D.N.J. 2003) (finding that service by certified mail alone is insufficient to effectuate service in accordance with Federal Rule 4(h)).

---

[2] The New Jersey Court Rule governing optional mailed service also does not help Plaintiff in this case.  New Jersey Court Rule 4:4-4(c) allows for optional mailed service instead of personal service, but that Rule applies only if the defendant enters an appearance in the case or responds to the mailed service. <u>See</u> N.J. Ct. R. 4:4-4(c).  As set forth above, however, Defendants neither have appeared nor answered the Complaint.

According to the New Jersey Rules of Court, service upon a domestic corporation may be performed by serving "any officer, director, trustee or managing or general agent, or any person authorized by appointment or by law to receive service of process on behalf of the corporation, or on a person at the registered office of the corporation in charge thereof. . ." N.J. Ct. R. 4:4–4(a)(6).  Usually, the mere acceptance "of service by an employee, other than an officer, director, trustee or managing or general agent, does not establish that the employee [had authority to accept service]."  Lee v. Genuardi's Family Markets, L.P., No. 10-01641, 2010 WL 2869454, at *3 (D.N.J. July 19, 2010) (citing West v. Am. Honda Motor Co., No. 08–0700, 2008 WL 4104683, at *5 (D.N.J. Aug. 28, 2008)).  The Third Circuit has instructed that "whether an individual is 'a managing or general agent' depends on a factual analysis of that person's authority within the organization. . . . He should be 'a responsible party in charge of any substantial phase' of the corporation's activity").   Gottlieb v. Sandia Am. Corp., 452 F.2d 510, 513 (3d Cir. 1971) (citations omitted).

By extension, courts have decided that service upon a corporation's employee satisfies Rule 4(h) when that individual is "so integrated with the organization that [they] will know what to do with the papers" or the representative stands "in such a position as to render it fair, reasonable and just to imply the authority on [their] part to receive service."  N.Y.  Pipeline Mech. Contractors, LLC v. Sabema Plumbing & Heating Co., No. 10-148, 2011 WL 2038766, at *2 (D.N.J. May 24, 2011) (citations omitted).  In that case, for example, the court ruled that Plaintiff improperly served process by leaving a copy of the summons and the complaint with a plumber who worked with defendant.  See id. at *2-3.

Here, Plaintiff unsuccessfully served Defendant Puzino Dairy three times.  Initially, as set forth above, Plaintiff attempted substituted service by mail without adequate reasons or evidence

10

to do so.  See Cert. of Service, Aug. 18, 2014, D.E. 7; see also Modan, 327 N.J. Super. at 47-48;
Schneider, 2010 WL 1490593, at *3.

In the second attempt to serve process, it appears that Plaintiff's friend tried serving
Defendants with the Summons and the Complaint at the parties' Totowa, New Jersey business
address.  See Cert. of Service, Aug. 21, 2014, D.E. 10.  Still, the Certificate of Service does not
indicate the name of the person with whom Plaintiff's friend left the documents.  See id.  That
information is critical because, under Rule 4(h)(1), a corporation is properly served if plaintiff
delivers the summons and complaint "to an officer, a managing or general agent, or any other
agent authorized by appointment or by law to receive service of process[.]"  Nothing in the
record, however, identifies Defendant Puzino Dairy's registered agent.  Thus, because the
Certificate of Service does not list who received process, the Court concludes that Plaintiff's
second attempt to serve was likewise improper.

Plaintiff's third attempt to serve Defendant Puzino Dairy fails for a related reason.  This
attempt involved delivering two copies of the Summons and the Complaint to Defendants' place
of business.  See Executed Summons, Sept. 25, 2014, D.E. 15.  However, the executed summons
indicates that it was left with an unnamed "receptionist."  Id.  Without any information
concerning either the unnamed receptionist's authority to accept service, or the receptionist's
role within Defendants' company, the Court cannot determine that service was improper.  See
Wohlegmuth v. 560 Ocean Club, 302 N.J. Super. 306, 309, (App. Div. 1997) ("Even if defendant
were a partner . . . our court rules do not permit service of process on him by serving a secretary
employed by the partnership, unless the secretary was authorized to accept service on defendant's
behalf."); US Wats, Inc. v. Long Distance Direct, Inc., No. 94-1837, 1994 WL 580180, at *2
(E.D. Pa. Oct. 21, 1994) ("In this case, it is Plaintiff's burden to establish that Defendant was

properly served [and] Plaintiff has not set forth any evidence to show that [defendant's receptionist] Ms. Suarez was either 'the person for the time being in charge' or in fact authorized to accept service on behalf of defendant.  Thus. . . delivery of the Complaint to the receptionist was improper service of process.").  The Court, therefore, cannot find that Plaintiff effected proper service as to Defendant Puzino Dairy, and therefore cannot enter default judgment against it.[3]

### B. DISMISSAL

Having decided that Plaintiff did not properly serve both Defendants, the Court must next consider whether dismissal of the case is appropriate.  See Fed. R. Civ. P. 4(m).  Because Plaintiff filed the Complaint on July 23, 2014, the one-hundred and twenty day deadline to serve

---

[3] It also bears noting that Defendants may have meritorious defenses to the claims.  See Animal Sci. Products, Inc. v. China Nat. Metals & Minerals Imp. & Exp. Corp., 596 F. Supp. 2d 842, 849 (D.N.J. 2008) ("[U]nder Rule 55(b)(2), the litigant is not entitled to a default judgment unless (s)he establishes that the essential elements of the pleaded claims are present and states factual allegations in support of these elements."); see also Mallory v. Verizon, No. 12-2366, 2013 WL 6865568, at *3 n.1 (D.N.J. Dec. 23, 2013) (noting that complaint merely alleged "Plaintiff was suspended and then dismissed by a supervisor "who is a racist.").

To state a claim under Title VII, a plaintiff must demonstrate: (i) membership in a protected class; (ii) qualification for the position that he or she no longer occupies; (iii) an adverse employment action; and (iv) circumstances in his or her case that exhibit an inference of unlawful discrimination.  See Jones v. School Dist. of Phila., 198 F.3d 403, 411 (3d Cir. 1999).  One common method of establishing employment discrimination is by providing direct evidence of an employer's "illegal motives or show[ing] that similarly situated employees who were not members of the protected class were treated more favorably."  Rainey v. Diamond State Port Corp., 354 F. App'x 722, 724-25 (3d Cir. 2009) (awarding African-American plaintiff only nominal default judgment damages where he provided no evidence that similarly situated "white or female employees" kept their jobs despite "[also] being deemed the aggressors in multiple physical altercations on the job.").

Here, the Complaint is three paragraphs long and largely consists of conclusory allegations of "harassment from coworkers [including Plaintiff's supervisor] Dave [Hascup]."  NJDCR Compl., at 2, D.E. 1-1.  The Complaint, however, does not discuss Defendants' treatment of other similarly situated employees; nor does the Complaint provide facts explaining how or why Plaintiff's membership in a protected class led to his alleged wrongful termination.

has long expired.  See id.  But before a court dismisses a case for insufficient process, it must

determine whether good cause exists to extend the time for service.  See Petrucelli v. Bohringer

& Ratzinger, 46 F.3d 1298, 1305 (3d Cir. 1995) ("First, the district court should determine

whether good cause exists for an extension of time. If good cause is present, the district court

must extend time for service and the inquiry is ended.  If, however, good cause does not exist,

the court may in its discretion decide whether to dismiss the case without prejudice or extend

time for service.").

 A showing of "good cause" requires "at least as much as would be required to show

excusable neglect [which is a] . . . demonstration of good faith on the part of the party seeking an

enlargement and some reasonable basis for noncompliance within the time specified in the

rules." Dominic v. Hess Oil V.I. Corp., 841 F.2d 513, 517 (3d Cir. 1988) (internal citations and

quotations omitted).  The Third Circuit has announced three factors that influence the good cause

analysis: "(1) reasonableness of plaintiff's efforts to serve, (2) prejudice to the defendant by lack

of timely service and (3) whether plaintiff moved for an enlargement of time to serve."  MCI

Telecomm. Corp. v. Teleconcepts, Inc., 71 F.3d 1086, 1097 (3d Cir. 1995).

 Courts have previously granted pro se litigants an extension of time for service where the

pro se party demonstrates reasonable or diligent efforts to serve the defendant.  See Prudential

Ins. Co. of Am. v. Bramlett, No. 08-119, 2010 WL 1752515, at *3 (D.N.J. Apr. 30, 2010)

(denying entry of default, where plaintiff mistakenly served via publication, and granting pro se

plaintiff a forty-five day extension to serve); see also Pinckney v. Sheraton Soc. Hill, No. 93-

5198, 1994 WL 376862, at *3 (E.D. Pa. July 15, 1994) (denying motion to dismiss complaint for

ineffective service where plaintiff, proceeding IFP, relied on the U.S. Marshals for service and

followed up with the Marshals and the Clerk's office about the service issue).

13

The record in this case persuades the Court that Plaintiff acted diligently in attempting to serve process.  Plaintiff attempted service on three different occasions, through three different methods, thereby demonstrated the diligence necessary to find good cause for an extension of time to serve.  Accordingly, the Undersigned respectfully recommends that the Court grant Plaintiff an additional thirty days to serve Defendant Puzino before considering dismissal of this matter.  See Emmanouil v. Mita Mgmt., LLC, No. 11-5575, 2012 WL 2277721, at *5 (D.N.J. June 15, 2012) ("This case is not one in which the plaintiff was derelict in attempting to serve the defendant. While not in literal compliance with the technical requirements of the rules, the Court finds Plaintiffs' attempts to serve the [Defendants] to be in good faith."); see also  Henry v. Cooper Univ. Hosp., No. 07-2402, 2008 WL 4371764, at *3 (D.N.J. Sept. 17, 2008) (granting pro se plaintiff twenty-day extension to serve where plaintiff never served employment discrimination complaint, because of apparent statute of limitations issue).

## IV.   CONCLUSION

For the reasons set forth above, the Undersigned respectfully recommends that the District Court: (i) deny Plaintiff's motion for default judgment [D.E. 27], and (ii) grant Plaintiff an additional thirty days to effect proper service of the Summons and the Complaint.

The parties are reminded that under 28 U.S.C. § 636, and L. Civ. R. 71.1(c)(2), they have fourteen days to file and serve objections to this Report and Recommendation.


Date: June 22, 2015


_s/ Michael A. Hammer_____
**UNITED STATES MAGISTRATE JUDGE**

14